**Ernest W. BOTEFUR, Plaintiff,**

v.

**Margaret HECKLER, Secretary, Department of Health and Human Services, Defendant.**

**No. Civ. 84–6520.**

United States District Court,
D. Oregon.

July 2, 1985.

Craig J. Casey, Asst. U.S. Atty., Portland, Or., Richard W. Wetmore, U.S. Atty, Seattle, Wash., for defendant.

## OPINION AND ORDER

JAMES M. BURNS, District Judge.

Ernest Botefur seeks judicial review pursuant to 42 U.S.C. 405(g) of a decision of the Secretary of Health and Human Services ("Secretary"), denying his application for disability benefits. Because the Secretary's decision failed to address certain key factual matters regarding transferability of skills, the case must be remanded for further proceedings.

### FACTS

Botefur is a 60 year old male with a 12th grade education. (A.R. 14).[1] His vocationally relevant work history consists of work as a municipal maintenance man. (A.R. 11, 14). This job involved manual labor such as shoveling dirt and asphalt, welding, pouring cement, and operating heavy equipment. (A.R. 78).

On December 10, 1981 Botefur was injured on the job when he was struck by a backhoe boom, injuring his back. (A.R. 10, 92). A chiropractor diagnosed his condition at that time as back sprain and strain. (A.R. 98). X-rays taken in March, 1982 indicated lumbar scoliosis, with a possible interverterbral narrowing at L2–L3. A herniated disc was ruled out at that time. (A.R. 90, 99).

On April 1, 1982, Dr. Wichser, Botefur's treating physician, noted restrictions in Botefur's physical movements and stated that it was "quite clear that he is fairly disabled." (A.R. 93). He made some improvement with medication and conservative treatment and on April 30 Botefur was released to return to "light duty" work. (A.R. 94).

On May 6, 1982, Botefur was examined by Dr. Degge for disability purposes. Dr. Degge found the claimant to be suffering from osteoarthritis, spondylosis and scoliosis, which were described as degenerative

---

1. Page references are to the Administrative Record.

changes. Dr. Degge felt that the job injury, a pelvic contusion, had resolved itself and the patient's condition was stationary. (A.R. 101). An EMG test on May 17 was normal, with nothing to suggest nerve damage. (A.R. 104, 105).

Botefur showed some improvement in motion by July, 1982, although he still complained of intermittent pain. (A.R. 96). In August he was examined by a Dr. Wasner, who found no evidence of rheumatic disease. (A.R. 119).

By November, 1982 Botefur was still having occasional pain in his arms, lower back, and right leg. His attorney referred him to Dr. Campagna, who recommended full myelography. (A.R. 109). Another EMG test was normal. (A.R. 110). The procedure showed cervical spondylosis, with mild defects in the lumbar region. Disc herniation was not revealed, but could not be absolutely excluded. (A.R. 113–115). No nerve root sleeve defects appeared. (A.R. 122).

Botefur was examined by a panel of physicians in January, 1983. They reported some restrictions in his flexibility, little strength impairment, and "no evidence of disturbance or interference from a functional standpoint." (A.R. 122). The general conclusion was reached that Botefur's condition had been stable for some months, and that he could return to work with some restrictions, or perhaps to another occupation. No surgery was indicated. (A.R. 123).

On February 8, 1983 Dr. Degge repeated his earlier conclusion that the hip contusion had resolved itself, and that Botefur's continuing problems were due to degenerative changes. He further opined that Botefur "is totally disabled for gainful employment within the scope of his educational background and training...." (A.R. 129). Medical records admitted after the hearing show another myelogram was taken in March, 1984, which indicated further degenerative changes, stenosis of the L4–L5 intervertebral space, and a moderate amount of cervical spondylosis. (A.R. 139, 143, 144).

The hearing was held on May 18, 1984. Botefur described his pain as emanating from his shoulders, hips, back, and legs. (A.R. 28–32). He stated that he could not sit for more than an hour or two. (A.R. 30). A vocational consultant was also present at the hearing, and identified 5 unskilled jobs that were thought to be within the physical capacities of the claimant. (A.R. 42). The vocational expert classified Botefur's former work as semi-skilled and of the "medium" exertion level. (A.R. 44). The expert also stated that if he were to accept Botefur's description of his symptoms and limitations as accurate, then he could not perform the alternative jobs which were identified. (A.R. 45).

The Administrative Law Judge ("ALJ") discounted Botefur's allegations of pain, noting that the claimant appeared well-rested, well-nourished, and able to communicate and ambulate, and perform household chores. (A.R. 13). Benefits were denied on the ground that Botefur could perform the job alternatives identified by the expert. This appeal followed.

DISCUSSION

The plaintiff's opening brief in this court properly notes some confusion in the ALJ's opinion, as to whether the decision was based on the absence of a "severe" impairment as that term is used in 20 C.F.R. § 404.1521. However, the Secretary's brief clarifies the agency's position that such a finding was not intended by the ALJ. Certainly the medical evidence would not support such a finding in any event.

■ The parties are thus in agreement up through the conclusion that Botefur is disabled from performing his former vocationally relevant work. The reports of Drs. Wichser and Degge (A.R. 93, 129) are in accord. At that point, the burden of proof shifts to the Secretary to demonstrate the existence of other suitable jobs, given the claimant's age, transferable skills, exertional and non-exertional limitations. *See, e.g.,* *Maounis v. Heckler,* 738 F.2d 1032, 1034 (9th Cir.1984); *Perry v. Heckler,* 722 F.2d 461, 464 (9th Cir.1983). The dispute in this

case centers on whether the Secretary has met this burden.

Applicable regulations classify Botefur as a person of "advanced age, close to retirement". 20 C.F.R. § 404.1563(d). The medical evidence mentioned above generally supports the proposition that Botefur is restricted from performing the full range of physical demands of his former job. Further, as reflected in the jobs listed by the vocational expert, he is limited to sedentary or light work as defined by 20 C.F.R. § 404.1567.

Taking into consideration the above factors, along with Botefur's educational level, the Secretary's medical-vocational guidelines dictate a finding of disabled under Appendix 2, §§ 201.06 and 202.06 if Botefur's skills are found to be "not transferable" to other work. Other regulations make clear that the tests for finding skills to be transferable for persons of Botefur's age are more stringent than for those of younger individuals. In particular, 20 C.F.R. § 404.1564(d) states that a claimant will not be expected to adjust to sedentary or light work unless he has skills which are "highly marketable". *See also* Appendix 2, § 201.00(f), which requires that "very little, if any, vocational adjustment" be involved in terms of tools, work processes, work settings, and the like.

The term "highly marketable" is not defined elsewhere in the regulations, but Social Security Ruling 82–41, "Disability-Transferable Skills", Unemployment Insurance Reporter (CCH Transfer Binder) ¶ 14,-168 (July, 1982) sheds additional light on the proper method of determining whether skills are transferable. This ruling provides, in part,

> To find that an individual who is age 55 or over and is limited to sedentary work exertion has skills transferable to sedentary occupations, there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry. The same is true for individuals who are age 60 and older and are limited to light work exertion. Individuals with these adverse vocational profiles cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semi-skilled jobs can be identified which have some degree of skill similarity with their PRW (Past Relevant Work). In order to establish transferability of skills for such individuals, the semi-skilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.

SSR 82–41 § 4(c), (CCH Transfer Binder at p. 2199–46). The ruling goes on to require specific findings of fact, supported with documentation, identifying the claimant's retained skills and how they are applicable to the proposed alternative jobs. *Id.* at p. 2199–47–48.

In this case the ALJ's decision states the conclusion that Botefur's past work included semi-skilled work, and that his skills were transferable to the 5 "unskilled" jobs identified by the vocational expert. (A.R. 13). This is insufficient. First, the decision does not identify in detail the types of skills that are found to be transferable. Much of Botefur's past experience consists of unskilled manual labor as a maintenance worker, and by definition no transferable skills are acquired as a result of such work. Presumably, then, the ALJ was referring to Botefur's experience operating heavy machinery. Yet there is no explanation of how such skills relate to such jobs as "small parts assembler" or "bindery worker". Thus the decision does not seem to comply with SSR 82–41.

Second, there is no discussion of whether Botefur's skills, whatever they may be, are "highly marketable" as that term is used in 20 C.F.R. § 404.1564(d). The vocational expert, when asked by counsel, was unable to offer an opinion on the issue. (A.R. 45). This is understandable considering the vagueness of the term, but even in its commonplace meaning there is nothing in

the ALJ's decision supporting such a conclusion as to Botefur.

Third, there are no findings in the ALJ's decision regarding the extent of the vocational adjustment that would be required of Botefur. One doesn't need an expert to observe that there is a world of difference between working on street repairs and assembling small parts in a factory, in terms of the "tools, work processes, work settings, or the industry." 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.00(f).

Fourth, it is not clear that the regulations even contemplate a transition to unskilled work for an individual with Botefur's vocational profile. The jobs identified by the expert were all "unskilled" jobs. (A.R. 42). By definition, these are jobs that require no particular skills or preparation, and can be learned in 30 days. 20 C.F.R. § 404.1568(a). If the regulations contemplated asking a person of Botefur's age and background to make the transition to unskilled work, there would never be any need to decide the issue of skill transferability. In other words, no matter what an individual's background was, his or her skills would always be "transferable" to "unskilled" jobs, since none are required for the latter. But considering the wording of § 404.1564(d), combined with the obvious intent of SSR 82–41 (quoted in part above), it seems clear that the types of jobs which are to be considered are limited to those of similar skill levels, and similar industrial settings. The existence of unskilled jobs in completely different fields should be legally irrelevant to individuals of Botefur's age and background. *See, e.g., Belton v. Schweiker*, 535 F.Supp. 1319, 1322–23 (D.D.C.1982) (skills as cook not transferable to job as cashier); *Whitehead v. Califano*, (Fed. Transfer Binder March 1982–Feb. 1983) Unemployment Ins. Rep. (CCH ¶ 14,239 (E.D.Mich. April 21,

1982) (semi-skilled work as a hi-lo driver not transferable to work in photo processing, jewelry or electronic assembly). It should also be noted that the claimants in these cases were 58 and 54 years old respectively, and had not come within the special provisions for those of "advanced age" as has Botefur in this case.

The above analysis, regarding transferability, is strongly buttressed by a decision of the Secretary's own Appeals Council. In that case the claimant was a dental technician who could no longer perform fine hand manipulations. The ALJ denied benefits because the claimant's skills were found to be "transferable" to certain unskilled, sedentary jobs. The Appeals Council reversed, noting:

> Section 416.968(D)(1) defines transferability as using skilled or semi-skilled work activities from past work to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. *There can be no transferability to unskilled work.*

6 O.H.A.L.Rep. No. 3, (SSA Pub. ® 70–002), p. 19 (May, 1982) (emphasis added).

In all of the above decisions the matter was remanded back to the agency to permit supplementation of the record in accordance with the principles set out in the regulations and SSR 82–41. I find such a course to be appropriate here because the Secretary may be able to carry her burden if expert vocational testimony indicates the availability of other semi-skilled jobs to which Botefur's skills are transferable, as that word is used in this opinion. The ALJ should identify particularly the skills that are transferable and should make explicit findings regarding the marketability of Botefur's skills, the extent of vocational adjustment involved, and how the transferable skills relate to the suggested other work.[2]

---

2. At the same time, counsel for Botefur may wish to supplement the record with certain medical information. It should be noted that the vocational expert stated that Botefur could not perform any of the specified jobs if the limitations claimed by Botefur, namely the need to rest frequently, were taken into account. Yet none of the medical reports that discuss the objective material findings (spondylosis, arthritis, etc.) explain how the medical diagnoses support the subjective complaints and limitations claimed by Botefur. Such evidence could be critical if further review in this case is ever required.

CONCLUSION

Because the record as developed below is inadequate for the reasons specified herein, the case is remanded to the Secretary for further proceedings. 42 U.S.C. § 405(g); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981).

IT IS SO ORDERED.