Yolanda **RENNER**, Plaintiff-Appellant,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–3882.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1985.

Decided April 15, 1986.

Donald B. Fishman, Fishman & Smith, Medford, Or., for plaintiff-appellant.

Patrick E. McBride, Seattle, Wash., for defendant-appellee.

Before: TANG and FARRIS, Circuit Judges, and KELLEHER,* Senior District Judge.

PER CURIAM:

Yolanda Renner appeals from a district court judgment affirming a decision of the Secretary of Health and Human Services ("Secretary") to deny Renner disability benefits. Renner contends that: (1) substantial evidence does not support the Secretary's finding that Renner was not disabled from performing any substantial gainful activity for a consecutive twelve-month period as a result of pain from heel spurs; (2) the Secretary erred in determining that Renner had transferable skills; and (3) the Secretary erred by failing to determine whether Renner's skills were highly marketable.

The Secretary's decision is hereby reversed and the case is remanded for further findings. On remand the Administrative Law Judge ("ALJ") is to consider the effect of Renner's advanced age on the transferability and marketability of her skills.

### FACTS

Yolanda Renner, 61 years old at the time of the hearing, has a high school education. She worked as both a grocery checker and drug store clerk from 1938 until 1977, when she stopped working full-time because of intense chronic foot pain. She worked for two weeks each Christmas

---

* Honorable Robert J. Kelleher, Senior District Judge for the Central District of California, sitting by designation.

from 1978 to 1980, and ceased working entirely in December 1980. In January 1982, Renner underwent surgery to remove her heel spurs. She was in a wheelchair for three months and on crutches for an additional three months.

Renner applied for disability benefits in November 1981. She claimed to be disabled since December 1980 as a result of foot pain which prevented her from standing for more than short periods. Renner's application for disability benefits was denied initially and on reconsideration. After a hearing, an ALJ determined Renner was not disabled. He found that, although she was unable to return to her previous work, she had transferable skills enabling her to perform sedentary work. He further found her pain had not prevented her from performing substantial gainful activity for a continuous twelve-month period. He based his decision in part on the testimony of a vocational expert who testified that Renner was capable of performing a variety of jobs with a minimal amount of training.

The ALJ's decision became the final decision of the Secretary when the Appeals Council denied Renner's request for review. The district court affirmed the Secretary's decision and Renner filed a timely appeal.

Upon reviewing the record, we find substantial evidence to support the ALJ's determination that Renner's pain did not prevent her from performing sedentary work for a consecutive twelve-month period.

The ISSUE which remains is: did the ALJ err in failing to properly determine the transferability and/or marketability of Renner's skills?

## TRANSFERABILITY

After finding that Renner retained the residual capacity to do sedentary work and that her previous job was classified as semi-skilled work, the ALJ considered the testimony of a vocational expert. The expert analyzed Renner's skills and concluded they were transferable. The ALJ applied Rule 201.07 of 20 C.F.R. Part 404, Subpart P, Appendix 2, Table I, which directed a finding that Renner was not disabled.

Renner contends that the skills she learned as a sales clerk are not transferable to the jobs listed by the vocational expert. The vocational expert testifed that Renner had the following skills: dealing with and selling to the public, handling cash, using a cash register, filling out credit card transactions, completing receipts, inventorying and ordering, inspecting merchandise, answering telephones, and figuring discounts. He stated that several of these skills were transferable to the jobs of box office cashier, telephone answering service operator, hotel/motel clerk, electronics inspector, and coilwinder (electronics), all of which are available in adequate numbers in Renner's geographical area.

The regulations provide that skills will be considered transferable "when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs...." 20 C.F.R. § 404.-1568(d)(1) (1985). A finding of transferability is most probable among jobs that involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a similarity of services or products. *Id.* § 404.1568(d)(2). Complete similarity of skills, however, is not necessary. *Id.* § 404.1568(d)(3).

Where a claimant is of advanced age (55 or over, *id.* § 404.1563(d)), the regulations further require that for skills to be transferable to other jobs, there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry. *Id.* § 404, Appendix 2, Table I, Rule 201.00(f). Finally, the regulations state that a claimant who is close to retirement age (60–64) and who has a severe impairment will not be considered "able to adjust to sedentary or light work unless [he] has skills which are highly marketable." 20 C.F.R. § 404.-1563(d).

The law of this circuit is unsettled regarding the transferability of a claimant's skills where that claimant is of advanced

age. Renner relies on *Blake v. Secretary of Health & Human Services*, 528 F.Supp. 881 (D.Mich.1981), to support her claim that under § 404.1563(d) her skills are not transferable. In *Blake*, the court held that an elderly assembly line worker was "presumed disabled" unless she had "the substantial vocational asset" of transferable work skills. *Blake*, 528 F.Supp. at 886.

The Sixth Circuit has adopted the holding in *Blake*. The court in *Weaver v. Secretary of Health & Human Services*, 722 F.2d 310, 312 (6th Cir.1983) noted that a person of advanced age has "little time to learn a new skill and apply it to a new job." *Id*. Hence, *Weaver* required the Secretary to show that elderly claimants have skills which are "directly transferable" in order to overcome a presumption of disability. Those skills must be "particularly transferable" or constitute a "substantial vocational asset." *Id*. *see also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984); *Wallace v. Secretary of Health & Human Services*, 722 F.2d 1150, 1156 (3d Cir.1983).

Here, the vocational expert testified that three of the recommended jobs—box office cashier, answering service operator, and motel clerk—involved "specific transferability of skills." The jobs of electronics inspector and electronics coilwinder did not, however, involve directly transferable skills; Renner merely demonstrated the aptitudes[1] to perform these jobs.

We find the reasoning of *Weaver* persuasive and accordingly hold that Renner could not be expected to perform the electronics jobs because, according to the vocational expert, she did not have skills that were directly transferable to those positions. As for the other three positions, the record is silent as to the amount of "vocational adjustment" required for Renner to transfer into them. The vocational expert noted only that the answering service operator requires some new skills, including manipulating a switchboard and taking messages.

Each of these jobs appears to require some adjustment to new industries and work settings. The vocational expert failed to demonstrate that Renner would be able to perform these jobs with very little, if any, vocational adjustment. *See* Rule 201.00(f). Therefore, the ALJ's finding of transferable skills constitutes legal error. *See Richardson*, 735 F.2d at 964; *Weaver*, 722 F.2d at 312.

The Secretary objects that no competent expert or ALJ would have overlooked any significant obstacle involving "vocational adjustment" in arriving at a finding of transferability. Indeed, it serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations. However, it is necessary to assure that the correct legal standard was applied. Thus the ALJ must either make a finding of "very little vocational adjustment" or otherwise acknowledge that a more stringent test is being applied which takes into consideration appellant's age.

## MARKETABILITY

■ Appellant argues that failure to take testimony specifically directed toward the issue of "marketability" of appellant's skills constitutes separate reversible error. Because appellant is over 60, if her foot pain were considered a "severe impairment" (an issue not decided below), she would be considered disabled if the record failed to support a finding that her work skills were "highly marketable." 20 C.F.R. § 404.1563(d).

The language of § 404.1563(d) implies that without a finding of high marketability, the skills of a person close to retirement age cannot be found transferable. *See* Francis, Social Security Disability Claims § 13:04 (1983); *Tom v. Heckler*, 779 F.2d 1250, 1256 (7th Cir.1985). *But see Blake*, 528 F.Supp. at 887 n. 15 (§ 404.1563(d) merely interprets Rule 202.00(f)). Thus, we cannot overlook the Secretary's failure to discuss this question or to make specific findings on marketability.

That marketability means something more than transferability is evident from

---

**1.** "*Blake* stands for the proposition that there is an inherent difference between 'aptitudes' and 'skills.'" *Weaver v. Secretary of HHS*, 722 F.2d 310, 311 (6th Cir.1983) (citing *Webster's Ninth New Collegiate Dictionary* for distinction between "innate" and "learned" abilities). *Compare* 20 C.F.R. § 404.1521(b) *with id.* at § 404.1565 *and id.* at § 404.1568.

the structure of the regulations. The regulations are designed to reflect the greater vocational difficulties of people close to retirement age, and they do so through five year gradations which recognize progressive difficulties. 43 Fed. Reg. 55359 (Nov. 28, 1978); *Tom,* 779 F.2d at 1256 n. 10. The test for transferability of skills of those close to retirement is the most generous.

We acknowledge that assessing marketability is made more difficult by the absence of a clear definition of the term in the statute or regulations. *Botefur v. Heckler,* 612 F.Supp. 973, 976 (D.Or.1985). The difficulty is illustrated by the *Botefur* court's reliance on rulings and regulations covering transferability to analyze the question of marketability. *Id.* However, we find the approach of the Seventh Circuit in *Tom* to be instructive. The court pointed out that insight into the meaning of marketability can be gained

> by referring to the definition of age in a preceding subsection of the Secretary's regulations. "Age" not only refers to "how old you are (your chronological age)" but also to "the extent to which your age affects your ability to adapt to a new work situation and *to do work in competition with others.*" 20 C.F.R. § 404.1563(a) (emphasis added).

*Tom,* 779 F.2d at 1257 n. 11.

The Secretary recognizes the relationship between age and the likelihood of employment and that the vocational advantage of acquired skills may cease to offset the disadvantage of age as a claimant grows older. *Id.*

The Secretary argues in Renner's case that marketability can be inferred from evidence adduced to support a finding of "direct transferability" requiring only "minimal vocational adjustment." In essence, the Secretary asserts that the vocational expert's testimony about transferability touched upon sufficient considerations relevant to marketability so as to adequately support a finding that Renner possessed "highly marketable" skills.

We reject this contention. The terms are not synonymous, and as indicated, the

*\* Oral argument waived on motion of appellees.*

structure of the regulations, with progressively more liberal requirements for older claimants, necessitates a separate and specific evaluation of marketability. At the least, the Secretary's decision must indicate the "approximate number and locations" of jobs for which he finds Renner has transferable skills to support a conclusion that despite her age Renner would be competitive in the job market for those positions. *See Tom,* 779 F.2d at 1257.

## CONCLUSION

The record as developed below is inadequate to establish transferability or marketability of skills in light of appellant's advanced age. The case is remanded to the Secretary for further proceedings.