823 F.2d 553
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald L. STONE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-1543.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1987.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Ronald L. Stone appeals from the district court's judgment upholding the decision of the Secretary of Health and Human Services ("Secretary") to deny his application for disability insurance benefits. Stone asserts that: (1) there is not substantial evidence in the record to support the Administrative Law Judge's ("ALJ") conclusion that he can perform light work; (2) the ALJ failed to make a finding that his transferable skills were "highly marketable"; and (3) even if there is substantial evidence to uphold the Secretary's decision, this case should be remanded to the Secretary for consideration of new and material evidence. For the reasons that follow, we reverse and remand with instructions that the Secretary determine whether claimant's transferable skills are highly marketable; in all other respects, we affirm the district court's judgment.
 
 I.
 
 2
 Claimant filed this application for disability insurance benefits on October 5, 1983, claiming a disability onset date of March 28, 1983, due to coronary heart disease. His claim was denied initially and upon reconsideration. Upon claimant's request, a hearing was held before an ALJ on November 19, 1984, at which time claimant and a vocational expert testified. The following is a synopsis of the testimonial and medical evidence.
 
 
 3
 Claimant was born on February 16, 1924, in England, making him 60 years of age at the time of the hearing. He stated that he had attended school until the age of fourteen, and had immigrated to the United States in 1968. His primary past relevant work experience was as a bricklayer and a maintenance man.
 
 
 4
 On March 18, 1983, claimant experienced crushing chest pain while at work, necessitating a hospital visit. His pain was eventually diagnosed by catheterizations as a symptom of coronary artery disease. Although he returned to work for a short time after a successful angioplasty, Stone experienced further chest pain in July 1983, necessitating another hospital stay and coronary bypass surgery. At the time of the hearing, claimant had not experienced chest pain for some time and did not consider his heart condition a severe impairment. Rather, claimant focused on three other impairments: intermittent leg cramping and pain relating to his heart condition (claudication), shortness of breath, and total blindness of his left eye.
 
 
 5
 Claimant testified that he wakes up every night from leg cramps, and that he can only walk 75 yards before he experiences cramps in his calves and thighs. He cannot kneel because his legs go numb, and he has difficulty walking up an incline. Although he testified that he could only sit for ten to fifteen minutes and stand for ten to fifteen minutes, he also testified that he had recently sat through a one and one-half hour movie without standing up. At a later time in the hearing he stated that he had spent an evening "walking the floors" because of his leg cramps. He does not use assistive devices, and although his legs become numb, he has never fallen because of instability. He testified that he gets severe pain in his legs about three times a week and. does not take any pain medication, only a blood thinner. Rather, he elevates his legs to relieve the pain. Stone stated that he had been told by one of his doctors that the veins in his legs will eventually have to be "stripped."
 
 
 6
 During the day, claimant watches occasional television, reads and talks to his wife; he does very little house or yard work. He stated that he cannot lift or carry twenty pounds because of doctor's orders, although he was able to pick up his fifteen-pound grandchild.
 
 
 7
 Claimant Stone stated that his second major impairment is shortness of breath, and his third is total blindness in his left eye resulting from an accident in 1946. He testified that although he knows how to weld, he had done very little welding in his previous jobs because he found it to be too risky to his one good eye.
 
 
 8
 The vocational expert testified that claimant's prior jobs of bricklayer and maintenance man were both semiskilled of a heavy exertional level. The vocational expert identified the following as acquired skills:
 
 
 9
 [T]he knowledge of bricklaying, the knowledge of bricks, knowledge of construction ...[,] use of hand tools, knowledge of molding machines, purchase of supplies, knowledge of electrical wiring, knowledge of welding.
 
 
 10
 She testified that these skills were directly transferable to several jobs at the sedentary and light exertional levels.[1] At the sedentary level, the vocational expert identified 2500 electrical wiring positions and 3500 positions as an order clerk to which his skills would be directly transferable. However, the vocational expert noted that significant vocational adjustment would be required for the order clerk positions. At the light exertional level, the vocational expert identified 3500 electrical wiring positions and 15,000 welding positions to which his skills were directly transferable.[2]
 
 
 11
 The medical reports revealed that claimant had been hospitalized on March 18, 1983, having experienced crushing chest pain. Angiograms and ventriculograms established that claimant had arteriosclerotic heart disease with 90% stenosis of the right coronary artery, proximal one-third. This was treated on March 28, 1983, with an angioplasty, which significantly reduced the narrowing of the artery. At that time, it was noted that claimant also had vascular disease of his lower extremities with claudication and weak pulses, and was blind in the left eye from a 1946 trauma.
 
 
 12
 On July 26, 1983, claimant was seen by Dr. Karsh, a cardiologist, because he had been experiencing further chest pain. Dr. Karsh noted that he detected no pulse in either of claimant's legs below the femorals, and stated that there was 95% stenosis in the proximal portion of his right coronary artery; accordingly, the angioplasty was determined to have been only temporarily successful. Dr. Karsh also noted that a chest x-ray revealed chronic lung disease. Claimant therefore underwent bypass surgery.
 
 
 13
 Claimant was seen by Dr. Morrill on November 22, 1983, upon the request of the Disability Determination Service. Dr. Morrill noted that claimant's bypass surgery appeared successful in that claimant had not experienced chest pain since the operation and had not used nitroglycerin. Dr. Morrill stated that claimant did not suffer from shortness of breath and had only mild chronic obstructive pulmonary disease. He noted further that claimant had intermittent claudication in his lower extremities upon walking one-half mile, but that the condition was not severe enough for treatment. Claimant's total blindness in his left eye was also reported. Dr. Morrill opined that claimant should not return to his previous work, but should be placed in a job with milder exertional requirements.
 
 
 14
 Dr. Karsh reported on November 28, 1983, that as of October 28, 1983, claimant no longer suffered from ischemic cardiac pain although he did suffer from severe intermittent claudication in his legs as well as dyspnea upon exertion. Dr. Karsh reported that he had recommended that claimant not return to work.
 
 
 15
 A Doppler examination was conducted on January 18, 1984. This revealed that Stone experienced pain in his calves after walking only a short distance which was relieved with resting for five minutes. His condition was diagnosed as moderately severe peripheral vascular disease.
 
 
 16
 Dr. Karsh submitted an additional report on March 26, 1984, reiterating that claimant did not have major symptoms of angina and that there was no other evidence of cardiac dysfunction. However, he opined that claimant had severe peripheral arteriosclerosis with intermittent claudication, as well as lung disease. He further opined that claimant could not return to his previous job and could not perform a job requiring physical effort or exposure to stress from interpersonal relationships, although he did not rule out all forms of work.
 
 
 17
 Dr. Kincaid, who also examined claimant upon the request of the Disability Determination Service, reported on May 25, 1984, that claimant's major limitation was arteriosclerotic occlusion of his lower extremities which claimant had reported would produce pain in his calves and buttocks upon walking 60-80 feet or one flight of stairs. Dr. Kincaid noted further that a pulmonary function test produced normal results, that claimant had only mild symptoms of lung disease and that his heart condition was presently asymptomatic. He also noted claimant's blindness in his left eye, stating that his right eye had corrected visual acuity of 20/30.
 
 
 18
 Based on the above testimony and medical evidence, the ALJ issued his decision denying benefits on February 20, 1985. The ALJ concluded that while claimant's heart condition was presently asymptomatic, it precluded the performance of heavy exertional tasks and was accordingly a severe impairment. Claimant's peripheral vascular disease, blindness of the left eye, and mild obstructive pulmonary disease were also considered severe impairments. However, the ALJ concluded that none of these impairments nor the combination of these impairments equaled a listed impairment. The ALJ relied on the opinions of Drs. Morrill and Karsh to conclude that claimant was unable to return to his past relevant work. The ALJ concluded further, however, that claimant's exertional and nonexertional impairments did not prevent him from performing a full range of light work, and the ALJ expressly discredited claimant's testimony regarding the extent of his pain and limitations. The ALJ also noted that claimant's blindness had not prevented him from working in his previous jobs.
 
 
 19
 Since claimant had skills which were transferable without significant adjustment to jobs as an electrical wiring assembler and as a welder--jobs which existed in significant numbers in the economy--and taking into account claimant's advanced age and limited education, the ALJ found that Rule 202.03, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, directed a conclusion of "not disabled." The ALJ also stated that he relied on Rule 202.03 as a "framework for decision making" to conclude that "there are a significant number of jobs in the national economy which the claimant could perform."
 
 
 20
 Claimant filed a request for review with the Appeals Council, which agreed to accept an additional medical report authored by Dr. Karsh. In his April 11, 1985, report, Dr. Karsh stated that a treadmill exercise test was completed on March 21, 1985, which indicated that claimant could only sustain three and one-half minutes of exercise before stopping due to leg cramps, severe dyspnea, and cardiac rhythm disturbance. He opined that claimant's exercise capacity was severely limited by claimant's lung disease and intermittent claudication of his legs. Dr. Karsh again reiterated his belief that claimant should not work, particularly in his earlier employment. The Appeals Council concluded that this additional report failed to supply new objective findings of claimant's impairments, and accordingly denied claimant's request for review. Therefore, the ALJ's opinion became the final decision of the Secretary.
 
 
 21
 Claimant filed a timely notice of appeal to the United States District Court for the Western District of michigan. On April 16, 1986, the district court affirmed the Secretary's decision, reasoning that the Secretary permissibly resolved the conflicts in the evidence regarding the extent of claimant's impairments. The district court specifically rejected claimant's argument that the ALJ erred in concluding that he had transferable skills versus mere aptitudes.
 
 
 22
 This timely appeal followed.
 
 II.
 
 23
 This court may set aside factual findings of the Secretary only if those findings are nonsupported by substantial evidence. See 42 U.S.C. Sec. 405 (g). "Substantial evidence" means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The substantiality of the evidence must be judged by viewing the record in its entirety, Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), and " 'must take into account whatever in the record fairly detracts from its weight." ' Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). The Secretary's determination must stand if supported by substantial evidence, even if the reviewing court would have resolved the issues of fact differently. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir. 1983) (per curiam).
 
 
 24
 A claimant has the ultimate burden of establishing an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423 (d) (1) (A).[3] In Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 528 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983), this court recognized that there is a five-step analysis in establishing disability. In the instant case, the ALJ found that Stone was not presently working and that he suffered from severe impairments. While the ALJ concluded that Stone's impairments or combination of impairments were not equivalent to an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he concluded that Stone was not capable of returning to his past work as a bricklayer or maintenance man. Accordingly, the ALJ concluded that Stone had established a prima facie case of disability. Stone does not challenge any of the above findings.
 
 
 25
 Therefore, in the fifth step of analysis the burden shifts to the Secretary to prove that the claimant is "able to perform substantial gainful activity in the national economy." Kirk, 667 F.2d at 528. In satisfying this burden, the Secretary must consider the individual's education, job experience, residual functional capacity, and education. See 42 U.S.C. Sec. 42 3 (d) (2) (A); 20 C.F.R. Sec. 404.1520 (f) (1) ; Heckler v. Campbell, 461 U.S. 458, 460 (1983). This burden can, on occasion, be satisfied by relying on the medical-vocational guidelines (the "grid"). See 20 C.F.R. Pt. 404, Subpt. P, App. 2. If a claimant's characteristics identically "correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform." Campbell, 461 U.S. at 462.
 
 A.
 
 26
 Claimant first argues that the ALJ's conclusion that he is capable of performing light work is not supported by substantial evidence. In particular, he argues that the medical evidence corroborates his testimony that he is incapable of standing and walking for extended periods of time as required for light work activity.
 
 
 27
 The regulations define "light work" as follows:
 
 
 28
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 
 
 29
 20 C.F.R. Sec. 404.1567(b). Principally, therefore, light work requires the exertional ability to lift up to twenty pounds, to frequently lift and carry up to ten pounds, to walk or stand frequently,[4] or sit most of the day while using arm or leg controls.
 
 
 30
 We agree with the district court that there is substantial evidence in the record to support the ALJ's conclusion that Stone retains the residual functional capacity to do light work. While his peripheral vascular disease is well documented, it has been described as only moderately severe and not severe enough to require surgery. The Doppler examination results, while establishing an impairment, do not necessarily direct a conclusion that claimant is unable to stand or walk for six hours out of an eight-hour work day. Further, claimant does not use assistive devices and has not experienced any instability from his condition. Both of these facts support the conclusion that his condition is not so severe as to preclude employment. Although two doctors agreed that claimant could not return to his previous work which was of a heavy exertional level, there is little support for the proposition that he cannot perform light work which requires significant, 'y less physical exertion than his previous jobs. Although claimant's testimony would preclude a light work finding, the ALJ expressly discredited his complaints of pain and limitations as being exaggerated. we do not find the ALJ's credibility findings to be unsupported given the medical evidence of record. Accordingly, we hold that the ALJ's conclusion that claimant is capable of performing light work is supported by substantial evidence.
 
 B.
 
 31
 Claimant next asserts that the ALJ failed to establish that his transferable skills were "highly marketable" as required by 20 C.F.R. Sec. 404.1563(d).
 
 
 32
 When an individual of advanced age and limited education, like claimant Stone, is found to have the residual physical capacity to do sedentary or light work, he must have transferable skills to be found not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.03 . (sedentary); Table 2, Rule 202.03 (light). In fact, a claimant with such characteristics is presumed disabled unless it is established that he or she has transferable skills. Weaver v. Secretary of Health & Human Services, 722 F.2d 310, 311-12 (6th Cir. 1983). Further, if an individual is "closely approaching retirement age (age 60-64), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00 (f). See also weaver, 722 F.2d at 312 (skills must be directly transferable to overcome this presumption). In the instant case, the vocational expert testified that claimant had skills which were directly transferable to electrical wiring and welding positions at both the sedentary and light levels and that little, if any, vocational adjustment would be required. Claimant does not challenge these findings on appeal.
 
 
 33
 In addition to these requirements, claimant relies on 20 C.F.R. Sec. 404.1563(d) for the assertion that his skills must be proven "highly marketable." Section 404.1563(d) provides:
 
 
 34
 Person of advanced age. We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity. If you are severely impaired and of advanced age and you . cannot do medium work (see Sec. 404.1567(c)), you may not be able to work unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy. If you are close to retirement age (60-64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are highly marketable.
 
 
 35
 This regulation requires an additional determination due to the recognition that age may have an impact on whether one's skills are transferable; without a finding that one's skills are highly marketable as opposed to just transferable, the existence of transferable skills may fail to offset the vocational disadvantage of one's advancing age. Varley v. Secretary of Health & Human Services, No. 86-1466 (6th Cir. June 2, 1987); Tom v. Heckler, 779 F.2d 1250, 1257 & n.11 (7th Cir. 1985); Renner v. Heckler, 786 F.2d 1421, 1424-25 (9th cir. 1986) (per curiam). In the present case, the vocational expert was not asked and offered no opinion as to whether claimant's skills are highly marketable. The ALJ likewise made no findings on this issue. The Secretary, relying on Tom and Renner, argues that section 404.1563(d) is satisfied where, as in the present case, a finding is made as to the number and location of available jobs to which the claimant's skills transfer.[5] The Secretary further argues that "[a] finding of disability turns on an individual's capacity to perform available work, not whether he can find a job." Brief at 21.
 
 
 36
 However, in Varley, we rejected these arguments:
 
 
 37
 A finding that plaintiff's transferable skills are highly marketable is required even though the Secretary relied on the testimony of the vocational expert. In the present case, the Secretary has determined that the skills plaintiff acquired in his medium-strength job at General Motors are transferable to the office jobs identified by the vocational expert. This evidence would be sufficient to support a finding that a younger individual is capable of performing substantial gainful activity. However, an individual of plaintiff's age will obviously have greater difficulty obtaining work in an entirely new setting:
 
 
 38
 "Age" not only refers to "how old you are (your chronological age)" but also to "the extent to which your age affects your ability to adapt to a new work situation and to do work in competition with others." 20 C.F.R. Sec. 404.1563 (a) (Emphasis added).... Although the statutory definition of disability specifically provides that vocational factors must be viewed in terms of their effect on the ability to perform jobs rather than the ability to obtain them, see 42 U.S.C. Sec. 423 (d)(2), the Secretary has nevertheless recognized that there is a direct relationship between age and the likelihood of employment, 43 Fed. Reg. 55353 (November 28, 1978), and that the advantage of having acquired (through past employment) certain skills or training may no longer offset the vocational disadvantage of age as a claimant becomes older.
 
 
 39
 Tom, 779 F.2d at 1257 n.11. See also Renner, 786 F.2d at 1425 ("the structure of the regulations, with progressively more liberal requirements for older claimants, necessitates a separate and specific evaluation of marketability.").
 
 
 40
 In our view, the regulation sets forth a straightforward command that before it can be determined that a claimant over sixty years of age, who acquired skills while performing medium work, is able to transfer those skills to sedentary work, it must first be shown that the skills are highly marketable. This proposition is intuitively reasonable, in that it reflects the reality that older persons, who do not possess highly marketable skills, will find it difficult to obtain any employment.
 
 
 41
 Varley, slip op. at 8-9 (footnote omitted; emphasis in original). Accordingly, this case must be remanded for a finding as to whether the claimant's skills are highly marketable.
 
 C.
 
 42
 Finally, claimant asserts that this case should be remanded to the .Secretary in light of "new and material" medical evidence. These medical reports are dated December 31, 1985, and February 18, 1986. while both of these medical opinions were in existence prior to the April 16, 1986, district court opinion, claimant did not present this evidence to the district court in an attempt to have the district court remand the case.
 
 
 43
 This court can remand only if it is established that: " (1) new material evidence is available and (2) good cause is shown for failure to incorporate such evidence into the prior proceeding." Willis v. Secretary of Health & Human Services, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam). See also 42 U.S.C. Sec. 405(g);[6] Wilson v. Secretary of Health & Human Services, 733 F.2d 1181, 1182 (6th Cir. 1984). Claimant argues that he has established "good cause" because this evidence did not exist at the time of the administrative hearing or upon petition for review before the Appeals Council. However, claimant fails to explain why this information was not provided to the district court when it appears to have been available well before the district court issued its opinion. Section 405 (g) was "designed to limit the ability of a reviewing federal court to remand the case to the Secretary." Willis, 727 F.2d at 553. One such limitation is that the claimant must explain why the information was not incorporated into the record in any prior proceeding, not merely prior proceedings before the Secretary.
 
 
 44
 Having failed to make a good cause showing, we decline to examine the additional medical reports to determine if they present new and material evidence of disability.
 
 III.
 
 45
 Accordingly, the judgment of the district court is AFFIRMED in part, and REVERSED in part, and this action is remanded with instructions that it be further remanded to the Secretary for a finding as to whether plaintiff's skills are highly marketable.
 
 
 
 [1]
 The vocational expert also identified jobs at the medium exertional level which are not relevant to this appeal
 
 
 [2]
 The vocational expert also identified several thousand unskilled sedentary jobs with sit-stand options
 
 
 [3]
 Section 423 (d) (1) (A) defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."
 
 
 [4]
 "Frequently" means six hours out of an eight-hour day. See Social Security Ruling 83-10 at 179 (cum. ed. 1983)
 
 
 [5]
 The Renner court cited Tom for the proposition that "[a]t the least, the Secretary's decision must indicate the 'approximate number and locations' of jobs for which he finds Renner has transferable skills to support a conclusion that despite her age Renner would be competitive in the job market for those positions." 786 F.2d at 1425. However, the Tom court declined to pass on the argument: "Indeed, the ALJ did not even include in his decision the approximate number and locations of the four jobs which the vocational expert identified ... (facts which the Secretary, at oral argument, urges that we accept as adequate to support an implicit finding that Tom possesses skills which are highly marketable)." 779 F.2d at 1257. In any event, the Secretary's interpretation would render the highly marketable skills requirement superfluous because the Secretary is already required to find that persons of "advanced age" (55 or over) "have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy." 20 C.F.R. Sec. 404.1563 (d) . We note the suggestion by one court that the "regulations ... would appear to mandate a consideration of the pool of persons with such skills and the claimant's likelihood of being able to compete with them." Bell v. Bowen, 658 F. Supp. 533, 539 (N.D. Ill. 1987) (expressing doubt that the Secretary could show that the claimant's data processing skills are highly marketable because "the pool of persons with such skills is very large, and most of them, we suspect, are far younger than Mrs. Bell.")
 
 
 [6]
 Section 405(g) provides that the court may remand a case for the taking of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...."