Verna B. TERRY, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health & Human Services,* Defendant–Appellee.

No. 89–35477.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1990.

Decided May 24, 1990.

* Louis W. Sullivan, M.D., has been substituted for Otis R. Bowen, M.D., pursuant to Fed.R.App.P. 43(c)(1).

Angelo Gomez, Ginsburg, Gomez & Neal, Hillsboro, Or., for plaintiff-appellant.

Richard Wetmore, Sp. Asst. U.S. Atty., Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.

Before BROWNING, ALARCON and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

Social Security regulations require that disability benefits be paid to a claimant whose impairments prevent her from doing her previous work, unless the Secretary can identify other types of work she can perform. Where the claimant is close to retirement age, the Secretary's burden is particularly heavy; he must identify jobs that are less demanding than the claimant's previous work, but not so easy as to require no skill at all. We consider whether the jobs identified by the Secretary in this case fall within the proper range.

### Facts

Verna Terry is sixty-four years old and has a high school education. For twenty-five years, she worked as a teller and clerk at Fred Meyer, Inc., a retail department store. In July 1985, her impairments forced her to stop working; she has had no substantial gainful employment since then. Terry suffers from osteoarthritis in her feet, degenerative arthritis in her neck and lower back, tendinitis in both shoulders, chronic back pain and a variety of gastrointestinal problems, including irritable bowel syndrome. At least one doctor has concluded that she is disabled. Terry applied for disability benefits in July 1986.

The ALJ, after carefully considering the medical evidence, concluded that Terry is almost disabled, but not quite. While her impairments prevent her from doing light work, including her previous job as a retail clerk, she is still capable of doing sedentary work, although less than the full range of such work because she can sit or stand for only one hour at a time. Based on the written testimony of a vocational expert, the ALJ determined that Terry has acquired skills from her past work that, despite her severe limitations, enable her to perform four jobs that exist in substantial numbers in the national economy: Cashier II (parking lot, ticket sales, etc.), Ticket Seller, Hand Bookkeeper and Hotel/Motel Clerk. The ALJ's determination became the final · decision of the Secretary of Health and Human Services when the Appeals Council denied Terry's request for review on June 14, 1988.

Terry appealed to the district court. The district judge affirmed the Secretary's decision for the most part, but ruled out one of the four jobs identified by the ALJ. The district court explained that Hotel/Motel Clerk is "light work," which the ALJ expressly found Terry cannot do. Still, because the court agreed that Terry can perform the three other identified jobs, it upheld the denial of benefits. Terry appeals.

## Discussion

### I

Federal statutes, administrative regulations and Social Security rulings [1] together form a comprehensive scheme of legal standards that ALJs must follow in determining whether a claimant is entitled to disability benefits. The basic requirement is that the claimant be "disabled," as that term is defined by statute. This requires that she suffer from a physical or mental impairment (or impairments) that is expected to result in death or to last for a continuous twelve-month period, and that prevents her from engaging in substantial gainful work. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982).

■ The burden of establishing disability is initially on the claimant, who must prove that she is unable to return to her former type of work. *Villa v. Heckler,* 797 F.2d 794, 797–98 (9th Cir.1986). Once she does so, the burden shifts to the Secretary to identify other jobs that the claimant is capable of performing. *Id.* at 797. In doing so, the Secretary must take into account the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. 20 C.F.R. §§ 404.1520(f)(1), 404.1565(a) (1989).[2]

■ As age is one of the factors that must be considered, it should surprise no one that the Secretary faces a more stringent burden when denying disability benefits to older claimants. Thus, while the Secretary can find younger claimants not disabled so long as they can perform unskilled work, *see* 20 C.F.R. § 404.1565(a), the same is not true of claimants of advanced age (fifty-five or over). Agency regulations consider this "the point where age significantly affects a person's ability to do substantial gainful activity." 20 C.F.R. § 404.1563(d). Accordingly, it is not enough that persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semiskilled work. 20 C.F.R. § 404, Subpart P, App. 2, Rules 201.04–.08 (Table No. 1). *See also* 20 C.F.R. § 404.1568(d). In addition, before the Secretary can find the claimant's skills transferable to sedentary work, he must show that "very little, if any, vocational adjustment [is] required." 20 C.F.R. § 404, Subpart P, App. 2, § 201.00(f).

■ Thus, in identifying other work a claimant can perform such that she is not disabled, the range of jobs the Secretary can point to narrows substantially when

1. While lacking the force of law, these rulings constitute the Social Security Administration's official interpretations of the statute it administers and of its own regulations. *Han v. Bowen,* 882 F.2d 1453, 1457 & n. 6 (9th Cir.1989). *See also* 20 C.F.R. § 422.408 (1989). As such, they are binding on ALJs. *Han,* 882 F.2d at 1457 n.

6; *Paulson v. Bowen,* 836 F.2d 1249, 1252 n. 2 (9th Cir.1988).

2. All references herein to Chapter 20 of the Code of Federal Regulations are to the 1989 version.

the claimant reaches age fifty-five. The work must be "less demanding" than that previously performed by the claimant, *see* 20 C.F.R. § 404.1563(d); at the same time, though, it cannot require so little skill that anyone at all could do it, as older people are at a competitive disadvantage for such jobs. Where the claimant is, as in this case, close to retirement age (sixty to sixty-four), there is an additional requirement: the Secretary must find her disabled unless her skills make her "highly marketable" for the sedentary jobs she is capable of doing. *Id.*

These are the legal standards applicable in this case. We must affirm the Secretary's decision if these legal standards were properly applied and the factual determinations resulting therefrom are supported by substantial evidence. *See Villa*, 797 F.2d at 796. The Secretary found that Terry's skills are transferable to four other jobs. One of these, Hotel/Motel Clerk, was ruled out by the district court because it is too physically demanding.[3] Terry maintains that we should rule out the other three because they don't comply with the legal standards set out above. Specifically, she contends that: (1) her skills[4] are not transferable to Cashier II and Ticket Seller because they are unskilled jobs and, as a matter of law, acquired skills are not transferable to unskilled jobs; (2) her skills are not transferable to Hand Bookkeeper because that job requires a higher level of skill than her past work; and (3) even if her skills are otherwise transferable, a significant vocational adjustment would be required and, even then, she would not be "highly marketable" as a Hand Bookkeeper. We address these contentions in turn.

## II

█ A. First, Terry contends that two of the three jobs identified by the ALJ (and approved by the district court)—Cashier II

and Ticket Seller—qualify as unskilled work. Her argument is persuasive because it relies entirely on the Secretary's own resources. Both jobs are defined in the *Dictionary of Occupational Titles*, U.S. Dep't of Labor (4th ed. 1977) (*DOT*), as well as *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles*, U.S. Dep't of Labor (1981) (*Selected Characteristics*). The Secretary routinely relies on these publications in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy. *See Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir.1986) ("The Secretary may rely on the general job categories of the [*DOT*], with its supplementary *Selected Characteristics*, as presumptively applicable to a claimant's prior work."). *See also* 20 C.F.R. § 404.1566(d)(1) (*DOT* is the Secretary's primary source of reliable job information); 20 C.F.R. § 404.1568 (the Secretary uses these publications to classify occupations as skilled, semiskilled and unskilled); 20 C.F.R. § 404.1569 (*DOT* classifies jobs by their exertional and skill requirements).

One feature of *Selected Characteristics* is that it assigns to each job a number that reflects its specific vocational preparation (SVP) time—i.e., how long it generally takes to learn the job. It assigns both Cashier II and Ticket Seller an SVP time of 2, defined as "[a]nything beyond short demonstration up to and including 30 days." *Selected Characteristics* at 225, 473. Terry correctly points out that this corresponds precisely to the definition of unskilled work embodied in SSA regulations. *See* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.... [W]e consider jobs unskilled if

---

3. The Secretary does not challenge this ruling on appeal.

4. Initially, Terry argued that she had acquired no skills from her experience at Fred Meyer, Inc., because it was unskilled work, from which one cannot acquire skills. *See* 20 C.F.R. § 404.1568(a) ("A person does not gain work skills by doing unskilled jobs."). The Secretary has offered substantial evidence that Terry's

past work did require some skill and, on appeal, Terry concedes that her duties as a retail clerk may rise to the level of semiskilled work, but just barely. *See* Appellant's Reply Brief at 1–2. We agree with this evaluation. Thus, we move to the question whether the skills Terry acquired from her past work are transferable to the jobs identified by the ALJ.

... a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.").

The Secretary "does not agree that the distinction of skilled or unskilled depends entirely on this 30–day factor." Appellee's Brief at 17. He points to other language in the definition of unskilled work suggesting that the term pertains only to work involving "one type of repetitive job function," such as assembly line work. *Id.* at 18. This argument is not without some basis in the language of section 404.1568(a),[5] but we cannot accept it, as the Secretary has bound himself to the thirty day requirement in a variety of other regulations and official rulings, most notably Social Security Ruling 82–41: "Jobs are unskilled when persons can usually learn to do them in 30 days or less." Soc.Sec. Ruling 82–41, [March 1982–Feb. 1983 · Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 14,168, at 2199–44 (July 1982).[6] *See also* 20 C.F.R. § 404, Subpart P, App. 2, § 201.00. Just as claimants are bound by SSA regulations, so is the Secretary. *See Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

Because the Secretary's own regulations compel a conclusion that these two jobs are unskilled, they cannot serve as a basis for finding Terry not disabled. Agency regulations recognize that an older claimant will generally be unable to compete effectively against younger persons in the job market unless she has some advantage. *See* 20 C.F.R. § 404.1563(d). Terry has no such advantage; to the contrary: She was sixty-two years old when the Secretary made his final decision to deny benefits, has an education that does not provide for direct entry into skilled work, and was found to be capable of only sedentary work. Under these circumstances, the regulations dictate that she is disabled, despite her capacity to perform sedentary work, unless she has acquired skills that are transferable to this work. *See* 20 C.F.R. § 404, Subpart P, App. 2, Rules 201.06, 201.07 (Table No. 1).[7]

Acquired skills do not transfer to unskilled work; they transfer only to other work that requires the same or similar skills. Section 404.1568(d) defines transferability as follows: "We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of *skilled or semi-skilled work activities* of other jobs or kinds of work" (emphasis added). Skills are not transferable to unskilled work because, by definition, unskilled work requires *no* skills. *See Allen v. Bowen,* 881 F.2d 37, 43 (3d Cir.1989) ("if the only jobs that a claimant can presently perform are of an unskilled nature, ... then plainly his former employment has transferred no skills of present value"). Thus, the Secretary cannot meet his burden by identifying unskilled jobs that Terry is capable of performing. *See Botefur v. Heckler,* 612 F.Supp. 973, 977 (D.Or.1985) ("The existence of unskilled jobs in completely different fields [than his past work] should be legally irrelevant to individuals of [claimant's] age and background").[8]

---

**5.** Even if we were to accept the Secretary's definition, it is possible that Cashier II (parking lot, ticket sales, etc.) and Ticket Seller would still qualify as unskilled work. As explained by the vocational expert, these jobs are quite easy to perform, such that Terry "would be handling no products other than receipts." Administrative Record (AR) 193. If they in fact involve nothing more than standing in a fixed location, handing out parking stubs and movie tickets, they may well involve only "one type of repetitive job function," thereby satisfying even the narrow definition of unskilled work advanced by the Secretary here.

**6.** We held in *Paulson v. Bowen,* 836 F.2d 1249, 1252 & n. 2 (9th Cir.1988), that Ruling 82–41, like all Social Security Rulings, is binding on ALJs.

**7.** As explained in Ruling 82–41, "a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs." Soc.Sec. Ruling 82–41, *supra* p. 8, at 2199–44.

**8.** Indeed, if Terry's skills are not transferable to the identified jobs, she is in the same position as someone who is unskilled. *See* 20 C.F.R. § 404.1565(a) ("If you cannot use your skills in other skilled or semiskilled work, we will consider your work background the same as unskilled."). And if she's unskilled, she's disabled. *See* 20 C.F.R. § 404, Subpart P, App. 2, Rule 201.01 (Table No. 1).

Additionally, even if Terry's skills could somehow be defined as transferable to the unskilled jobs identified by the ALJ, she would not be

The ALJ's finding that Cashier II and Ticket Seller are semiskilled occupations contradicts the job descriptions in *DOT* and *Selected Characteristics*, and the Secretary offers no explanation why these job descriptions (on which the agency regularly relies) do not apply in this case. We conclude that these jobs are properly classified as unskilled. Accordingly, the ALJ's finding that Terry's skills were transferable to these two occupations violated sections 404.1565(a) and 404.1568(d). This failure to comply with the applicable agency regulations does not necessarily require reversal, however, as the Secretary identified one other job Terry could perform—Hand Bookkeeper. It is to that issue that we now turn.

▮ B. Terry concedes that, unlike Cashier II and Ticket Seller, Hand Bookkeeper is a semiskilled occupation. Nonetheless, she argues that her skills aren't transferable because the bookkeeping position requires more skills than she possesses. Terry's past relevant work for Fred Meyer, Inc., most closely conforms with *DOT*'s definition of Cashier–Checker, which carries an SVP of 3. *DOT* at 167; *Selected Characteristics* at 225. This means that it takes between thirty and ninety days to learn the job, putting it at the lowest end of semiskilled work. *Selected Characteristics* at 473.[9] The bookkeeping position identified by the ALJ, she argues, carries a higher SVP ranking. Indeed, while Hand Bookkeeper is not an occupation listed in *DOT* or *Selected Characteristics*, all of the bookkeeping positions that are listed in *Selected Characteristics* have SVP rankings between four and six. *Selected Characteristics* at 221. Thus, even the easiest of the listed bookkeeping positions, Bookkeeper II, is expected to take between 90 and 180 days to learn; most of the other positions require training for as long as one year. *Id.* at 221, 473.

Given that all of the bookkeeping positions carry higher SVP rankings than her prior work, Terry invokes section 404.-1568(d), which provides that "[t]ransferability is most probable and meaningful among jobs in which ... the *same or a lesser degree* of skill is required." 20 C.F.R. § 404.1568(d)(2). This fact is reiterated in Ruling 82–41, which explains that "people are not expected to do more complex jobs than they have actually performed." Soc. Sec. Ruling 82–41, *supra* p. 8, at 2199–46. *See also* 20 C.F.R. § 404.1563(d) (persons of advanced age "may not be able to work unless [they] have skills that can be used in (transferred to) less demanding jobs").

The Secretary admits that "the record does not contain adequate information on this job to determine the definition in the DOT." Appellee's Brief at 21. Nevertheless, he contends that the ALJ's finding is supported by substantial evidence since the vocational expert, after reviewing Terry's file, identified this job as sedentary and within Terry's job skills. At the very least, the Secretary insists that there is enough evidence to warrant a remand for further information regarding the skills required for Hand Bookkeeper.

If Terry were not close to retirement age, this would be a close question. The vocational expert did review Terry's file and list the skills she has acquired before determining that she is capable of working as a Hand Bookkeeper. *See* AR 185, 193. On the other hand, the expert shed virtually no light on what the job involves. His only comment was that, "[i]n the Hand Bookkeeper job she would not be handling products but would be recording data within a bookkeeping system." AR 193. Given that it was the Secretary's burden to demonstrate that Terry is capable of other

---

"highly marketable" in these occupations, as she would have no significant advantage over a younger person with no skills. As mentioned earlier, the "highly marketable" requirement is an additional protection for the oldest applicants (ages 60–64), acknowledging that competitive disadvantage increases with age.

**9.** The Secretary suggests that Terry's prior work may fit the description of Cashier I, which

carries an SVP of 5. *See DOT* at 166; *Selected Characteristics* at 225. We disagree. The description of Cashier I includes a wide range of job duties that far surpass in scope and degree of responsibility the work Terry performed at Fred Meyer, Inc., including endorsing checks, totalling cash and checks for bank deposits, withdrawing cash from bank accounts, as well as writing and disbursing .checks to pay for company expenditures.

work, that every bookkeeping position listed in *DOT* carries an SVP higher than her past work, and that the vocational expert failed to explain what makes Hand Bookkeeper easier than those listed positions, it may be that the expert's laconic description of Hand Bookkeeper does not amount to substantial evidence.

But we need not decide this question. Even if Terry is capable of working as a Hand Bookkeeper, that's not enough; because she is close to retirement age, the Secretary must satisfy additional legal standards before denying her benefits. Not only must her skills be transferable, there must be little vocational adjustment required and her skills must make her highly marketable. *See* pp. 1275–1276 *supra. See also Russell v. Bowen,* 856 F.2d 81, 83 (9th Cir.1988); *Renner v. Heckler,* 786 F.2d 1421, 1423 (9th Cir.1986). The effect of these two additional requirements on the Secretary's burden is explained in Ruling 82–41:

> [I]ndividuals who are age 60 and older and are limited to light work exertion … cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semi-skilled jobs can be identified which have some degree of skill similarity with their [past relevant work]. In order to establish transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be *so closely related to other jobs which they can perform* that they could be expected to perform these other identified jobs at a *high degree of proficiency with a minimal amount of job orientation.*

Soc.Sec.Ruling 82–41, *supra* p. 1277, at 2199–46 (emphasis added). *See also Botefur v. Heckler,* 612 F.Supp. 973, 976 (D.Or. 1985). This applies with even more force to Terry, as she is capable of no light work, and less than the full range of sedentary work.

We have no doubt that the ALJ attempted to comply with the proper legal standards. His letters of inquiry to the vocational expert explained that Terry's skills had to make her highly marketable and asked what vocational adjustments she'd have to make, AR 192; after reviewing the expert's responsive letters, the ALJ made findings on both of these requirements. ALJ Decision at 4. Thus, this is not a case like *Renner,* where the ALJ failed to acknowledge the more stringent standards applicable to claimants who are close to retirement age. *See Renner,* 786 F.2d at 1424–25.

Unfortunately, though, the vocational expert's written responses, contained in three letters, each about a page (or less) long, are not particularly enlightening. *See* AR 185, 193–94, 198. These letters do not use the terms "highly marketable" or "vocational adjustment," nor do they use any equivalent phraseology. Most troubling, these letters reflect no understanding of the applicable legal standards. In response to the ALJ's question about vocational adjustment, the expert stated that the work setting would be different and that Terry would be recording data instead of handling products. AR 193. It is thus unclear, for example, whether he considered relevant the fact that Terry has never before had a sit-down job. *See* AR 41–42. As to being "highly marketable," he merely stated that she would be "competitive," without explaining what edge her skills, acquired in the lowest end of semiskilled employment, would give her compared to persons half her age against whom she would be competing. AR 193.

While it is possible to imagine cases where a vocational expert's understanding of the applicable standards would be clear from context, this is not such a case. It has already been established that the expert applied the wrong standards in finding Terry able to perform the other three jobs: she can't be a Hotel/Motel Clerk because this is light work, which the district court correctly held she cannot do; her skills are not transferable to Cashier II or Ticket Seller because these are unskilled occupations. The vocational expert was thus not clearly familiar with the applicable statutory standards.

Accordingly, we hold that none of the jobs identified by the expert and relied on by the ALJ to find Terry not disabled satisfy the applicable legal standards. While

Terry's work at Fred Meyer, Inc., may have involved one activity akin to bookkeeping—operating an adding machine to add up sales receipts—it is impossible to conclude on the record before us that her skill at this one task is sufficient to enable her to perform as a Hand Bookkeeper with "a high degree of proficiency with a minimal amount of job orientation." Soc.Sec. Ruling 82–41, *supra* p. 1277, at 2199–46.

### III

■ We have the discretion to remand so that the Secretary may further develop the record as to the duties of a Hand Bookkeeper, how long it takes to learn these duties and whether Terry's acquired skills make her highly marketable for this position. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1988). Given the exceptional facts of this case, however, we invoke our discretion to order payment of benefits.[10] Terry is currently 64 years old; it's been almost four years since she applied for benefits and further delays at this point would be unduly burdensome. Most important, it is very doubtful that the Secretary would be able to sustain his burden of showing that Terry was highly marketable as a Hand Bookkeeper even if we did remand.

Finally, Terry requests attorneys fees under the Equal Access to Justice Act. The EAJA allows prevailing plaintiffs to recover fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1987). *See also Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir.1989). As we reverse the district court's judgment and remand for the payment of benefits, Terry qualifies as a prevailing plaintiff. The question whether the government's position was substantially justified, though, is for the district court to decide on remand. *Pierce v. Underwood*, 487 U.S. 552, 559, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988); *Swenson*, 876 F.2d at 690.

**10.** In light of our holding, we do not reach Terry's claim that the Secretary ignored the opinion of Dr. Schlippert, her treating doctor

### Conclusion

The judgment of the district court is reversed and the case is remanded.

for gastrointestinal problems, without stating clear and convincing reasons for doing so.