2 F.3d 1157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Wanda ROSS, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary,* Defendant-Appellee.
 No. 91-35935.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 1993.
Decided Aug. 11, 1993.
 
 Before: SKOPIL, ALARCON, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The Secretary of Health and Human Services denied Wanda Ross entitlement to Social Security disability insurance benefits. The district court affirmed; Ross appeals. We hold that both the district court and the Administrative Law Judge ("ALJ") applied an incorrect legal standard in their determination that Ross has acquired transferable skills. Accordingly, we reverse.
 
 
 3
 * A. Standard of Review
 
 
 4
 We review de novo the district court's judgment regarding the Secretary's denial of benefits. Gamer v. Secretary of Health and Human Servs., 815 F.2d 1275, 1278 (9th Cir.1987). We reverse a decision by the Secretary to deny benefits only if that decision is not supported by substantial evidence or if it is based on legal error. Brawner v. Secretary of Health and Human Servs., 839 F.2d 432, 433 (9th Cir.1988). In determining whether the findings are supported by substantial evidence, we must examine the record as a whole, considering both evidence that supports and evidence that detracts from the Secretary's conclusion. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir.1990).
 
 B. The Statutory and Regulatory Regime
 
 5
 In determining whether a claimant is entitled to disability benefits, the ALJ is required to weave through a complex web of federal statutes, administrative regulations, and Social Security rulings.[1]
 
 
 6
 Although the Secretary can find younger claimants not disabled if they can perform unskilled work, see 20 C.F.R. Sec. 404.1565(a), the same is not true of claimants age fifty-five or older. These claimants must be shown to have acquired skills from their past work that are transferable to skilled or semiskilled work. 20 C.F.R. Sec. 404, Subpart P, App. 2, Rules 201.04-.08 (Table No. 1); Terry, 903 F.2d at 1275. "Skills are not transferable to unskilled work because, by definition, unskilled work requires no skills." Terry, 903 F.2d at 1277 (emphasis in original). Jobs are classified as unskilled when persons can usually learn to do them in thirty days or less. Soc.Sec. Ruling 82-41; Terry, 903 F.2d at 1277.
 
 
 7
 Before the Secretary can find an advanced-age claimant's skills transferable, she must show that "very little, if any, vocational adjustment [is] required." 20 C.F.R. Sec. 404, Subpart P, App. 2, Sec. 201.00(f); Terry, 903 F.2d at 1275. The work must be "less demanding" than that previously performed by the claimant, 20 C.F.R. Sec. 404.1563(d), but not require so little skill that anyone at all could do it, as older people are at a competitive disadvantage in the employment market. Terry, 903 F.2d at 1276.
 
 
 8
 When the claimant is close to retirement age (age sixty to sixty-four), the Secretary must find her disabled unless her skills make her "highly marketable" for the sedentary jobs she is capable of performing. 20 C.F.R. Sec. 404.1563(d); Terry, 903 F.2d at 1276. In proving that the claimant's skills are highly marketable, it is not enough to show that the claimant's skills are highly transferable. Renner v. Heckler, 786 F.2d 1421, 1424-25 (9th Cir.1986) (direct transferability does not equal marketability). When a claimant has acquired skills in the lowest level of semiskilled work (such as a grocery checker), the Secretary must also "explain[ ] what edge her skills ... would give her compared to persons half her age against whom she would be competing." Terry, 903 F.2d at 1279.
 
 
 9
 Finally, the job titles referred to by the parties (Cashier I, II, and Grocery Clerk), are defined in Dictionary of Occupational Titles, U.S. Dep't of Labor (4th ed. 1977) ("DOT"), as well as Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, U.S. Dep't of Labor (1981) ("Selected Characteristics"). See Terry, 903 F.2d at 1276 ("The Secretary routinely relies on [DOT and Selected Characteristics] in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."). One of the features of Selected Characteristics is that it assigns to each job a number that reflects its specific vocational preparation ("SVP") time--i.e., how long it generally takes to learn the job. Id.
 
 C. Vocational Expert Testimony
 
 10
 The vocational expert testified that Ross's job as a grocery checker carries an SVP rating of 3, meaning that the position takes between thirty days and three months to learn, AR at 91,[2] and that the position of Cashier I carries an SVP rating of 5 which means it requires between six months to one year to learn.[3] AR at 92. The vocational expert also testified that Ross had acquired transferable skills in her position as a grocery checker that would transfer to the semi-skilled position of Cashier I. AR at 85.
 
 
 11
 When asked what specific "skills" were shared by the positions of grocery clerk and Cashier I, the vocational expert replied:
 
 
 12
 The biggest key to the job as a grocery checker is the or the biggest elements in my opinion, are the ability to interact with the public, the accuracy of the work, the ability to deal with funds. Those would be the same kinds of elements required in other cashiering jobs in terms of the elements.
 
 
 13
 AR at 100.[4] When asked her definition of "skill," the expert replied:
 
 
 14
 It's something that--well, it is something that is and can be learned in a work setting. Certainly the day that Mrs. Ross started with Safeway, she didn't have the ability to memorize and retain all of the different sale items and different codes right off the bat. That's something that she acquired that--and developed that skill as time went on. A person is not proficient from day one in doing that kind of activity.
 
 
 15
 AR at 93. When asked which of her skills made her "highly marketable," the expert again replied "[h]er public contact ability, ability to operate a cash register, ability to work accurately in terms of making change and complete financial transactions." AR at 100. Finally, despite her testimony that the above abilities constitute "skills," the expert conceded that unskilled cashiers are required to have the ability to interact with the public and make change accurately. AR at 105.
 
 
 16
 The testimony cited above indicates the expert's general confusion regarding the legal definition of "transferable skills." Although basing her opinion on the fact that Ross had transferable "skills" such as public interaction, accuracy, memorization, and making change, these "skills" are the same abilities required in unskilled positions as defined by the regulations.
 
 
 17
 For example, according to DOT Sec. 211.462-010, an employee in the unskilled position of Cashier II "[r]eceives cash from customers or employees.... Recomputes or computes bill ... using adding machine or cash register.... Makes change, cashes checks, and issues receipts or tickets to customers.... May be required to know value and features of items for which money is received." These are the very same abilities identified by the vocational expert as "skills" transferable to the semi-skilled position of Cashier I.
 
 
 18
 As we noted in the previous section, abilities required in unskilled positions are, by definition, not "skills." Terry, 903 F.2d at 1277. Contrary to the expert's opinion that skills are something an employee "learn[s] in a work setting," only those abilities that take between six months and a year to learn qualify as "skills." This distinction is crucial to the objective of the guidelines. By requiring the acquisition of particular skills which allow an employer to avoid a prolonged training period, the regulations seek to reduce the competitive disadvantages facing elderly job applicants.
 
 
 19
 The Secretary argues that we should defer to the testimony of the vocational expert and cites 20 C.F.R. Sec. 404.1566(e)[5] and this court's decision in Russell v. Bowen, 856 F.2d 81, 83 (9th Cir.1988) (questions of credibility and resolutions of conflicts in vocational expert testimony are left to the ALJ). At oral argument, the Secretary seemed to take the position that expert testimony is per se "substantial evidence."
 
 
 20
 There is room to question the Secretary's position regarding the deference due to expert testimony.[6] However, we need not address this issue where the judgment of the ALJ is based on legal error. Moreover, because the Secretary has failed to meet her initial burden of establishing the existence of transferable skills, we decline to discuss whether the record contains sufficient evidence to support a finding that Ross's skills made her highly marketable.
 
 CONCLUSION
 
 21
 The district court is REVERSED and the case is remanded for proceedings consistent with this memorandum.
 
 
 
 *
 Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although these rulings lack the force of law, they constitute the Social Security Administration's official interpretation of the statute it administers and its own regulations. "As such, they are binding on ALJs." Terry v. Sullivan, 903 F.2d 1273, 1275 n. 1 (9th Cir.1990)
 
 
 [2]
 AR refers to the Administrative Record
 
 
 [3]
 The position of Cashier I requires the ability to receive and disburse funds, record monetary transactions, count money to verify amounts and issue receipts, compare totals in cash registers with currency in register to verify balances, endorse checks, total cash and checks for bank deposits, prepare bank deposit slips, withdraw cash from bank accounts and keep custody of cash fund, disburse cash and write vouchers and checks in payment of company expenditures, compile collection, disbursement, and bank-reconcilliation reports, operate typewriters, calculators, bookkeeping and check writing machines, authorize plant expenditures and purchases, and prepare payroll and paychecks. DOT at Sec. 211.362-010. All of these skills appear significantly more complex than the abilities required in the position of grocery clerk. Terry, 903 F.2d at 1278 n. 9 (the position of Cashier I "includes a wide range of job duties that far surpass in scope and degree of responsibility the work [of a cashier-clerk]")
 
 
 [4]
 At a different point in the record, the expert testified Ross's specific skills transferable to the position of Cashier I included the ability to interact with the public, the ability to memorize and the ability to make change accurately. AR at 93
 
 
 [5]
 20 C.F.R. Sec. 404.1566(e) states "If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist."
 
 
 [6]
 We have held that an vocational expert's testimony in a disability benefits proceeding is valuable only to the extent that it is supported by the evidence. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984). For instance, if testimony is based on assumptions not supported in the record, the opinion of the vocational expert has no evidentiary value. Id. See also Delorme v. Sullivan, 924 F.2d 841, 850 (9th Cir.1991) ("If the hypothetical does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.")