**Son Thi KHUU, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of the Social Security Administration, Defendant.**

No. CV 96-0676 TJH (JG).

United States District Court, C.D. California.

March 6, 1997.

Finkelberg & Finkelberg, Louis I. Finkelberg, Ellen S. Finkelberg, Los Angeles, CA, for Plaintiff.

Nora M. Manella, U.S. Attorney, Leon W. Weidman, Assistant U.S. Attorney, Chief, Civil Division, John K. Rubiner, Assistant U.S. Attorney, Los Angeles, CA, for Defendant.

ORDER ADOPTING REPORT AND REC-OMMENDATION OF MAGISTRATE JUDGE (Social Security)

HATTER, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has reviewed the complaint, the records and files herein, the attached Report and Recommendation of Magistrate Judge, and the objections to the Report and Recommendation filed by plaintiff. The Court concurs with the findings and conclusions of the Magistrate Judge. Accordingly,

**IT IS HEREBY ORDERED** that

(1) the Report and Recommendation of the Magistrate Judge be, and hereby is, approved and adopted; and

(2) judgment be entered dismissing the action with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall serve copies of the Order Adopting and Judgment by United

States mail on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

GROH, United States Magistrate Judge.

REPORT AND RECOMMENDATION
OF MAGISTRATE JUDGE
(Social Security)

This Report and Recommendation is submitted to the Honorable Terry J. Hatter, Jr., United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

Plaintiff has filed a complaint under 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of the Social Security Administration (Commissioner) denying supplemental social security income (SSI) benefits. Defendant has answered and the parties have filed cross-motions for summary judgment. For the reasons discussed below, it will be recommended that the Commissioner's decision be affirmed and the complaint dismissed.

## BACKGROUND

On December 3, 1991, plaintiff filed her application for SSI, claiming disability from January 15, 1991, due to high blood pressure, headaches, heart palpitation, tiredness, dizziness, poor memory and forgetfulness. (Administrative Record (A.R.) 40–44.) Initially and upon reconsideration, plaintiff's application was denied, and she received a hearing before an Administrative Law Judge (ALJ) on November 18, 1994. The ALJ found that plaintiff had the following severe medically determinable impairments: hypertension and

atypical chest pain. (A.R.14, 19.) He concluded, however that plaintiff's allegations of disabling pain and inability to perform work activities were not credible. He rejected plaintiff's claim at step four[1] of the evaluation process, finding that plaintiff retained the residual functional capacity to perform her past relevant work as a "market vendor." (A.R.14, 19.) The Appeals Council denied plaintiff's request for review (A.R.3–4), and the ALJ's decision stands as the Commissioner's final decision in this case.

## RELEVANT RECORD EVIDENCE

Plaintiff is 59 years of age. She was educated through the fourth grade in her native Vietnam. Prior to migrating to California in 1979, she owned and operated a market stall in Vietnam for twenty-one years, first selling fabrics (13 years) and then appliances such as rice cookers, small portable stoves, and irons (7–8 years). She had two employees to help with the heavy work. (Pl's Mem. at 1; A.R. 27–30.) She closed the business in 1975 due to the Communists' takeover of Vietnam. (A.R.27–30.) There is no evidence that she has engaged in a substantial gainful activity since that date.

Plaintiff had seen Dr. Kwan, a cardiologist, since 1986 for heart-related ailments and hypertension. (A.R. 105–119 and 128–137.) A 1986 treadmill test was positive for myocardial ischemia, angina pectoris and myocardial irritability.[2] (A.R.119.) Her medications record indicated that as of October 1994 (one month before the hearing), she had been prescribed medications to control cardiac symptoms, high cholesterol, high blood pressure, and stomach disorder. (A.R.137.)

---

1. The regulations prescribe a five-step evaluation. 20 C.F.R. Section 416.920. In summary, in order to determine disability:

 [t]he following steps are addressed in order. (1) Is the claimant presently unemployed (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Does the impairment prevent the claimant from performing his/her past relevant work? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3,

stops the inquiry and leads to a determination that the claimant is not disabled.
*Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984). *See also Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991)

2. Myocardial ischemia is a condition in which the heart suffers from a lack of blood supply due to a narrowing of the coronary arteries. *See* 1 *Schmidt's Attorney's Dictionary of Medicine* at I–190 (1996 ed.). Angina pectoris refers to a group of symptoms (most notably, chest pain) arising suddenly and intermittently as the result of a sudden contraction of the smaller arteries which supply blood to the heart muscle. 2 *id.* at A–245.

After conducting an internal examination at defendant's request in July 1992, Dr. Fabella reported that plaintiff's chest pain was atypical because it was constant, and that her blood pressure was only mildly elevated. (A.R.103.) He also reported that the plaintiff's spinal range of motion, gait, muscle bulk, and muscle tone were normal, and that she displayed good motor strength and no neurological deficits. An EKG taken was essentially normal. (A.R.99–103.)

Following a psychiatric examination requested by the defendant, Dr. Coudreaut reported "no diagnosis" in July 1992. (A.R.98.) By a one-page letter dated November 22, 1991, plaintiff's psychologist, Dr. Demos, diagnosed plaintiff with post-traumatic stress disorder (chronic) and chronic dysthymia (a mood disorder less severe than major depression).[3] (A.R.93).

Plaintiff was represented by counsel at the hearing conducted on November 18, 1994. The ALJ received testimony from plaintiff, a medical expert and a vocational expert. Plaintiff testified that she has been feeling hot in the face and fatigued for the last eight years, and that these symptoms have worsened over the last two years. (A.R.31.) She stated that she lies down during most of the day due to fatigue and rapid heartbeat, and sleeps very little during the night. (A.R.32.) She further testified that her husband does the shopping and cooking, and that her daily activities consist of walking around inside the house, washing tables, and sweeping the floor. (A.R.32–33.) She claimed inability to walk more than one block due to tiredness. (A.R.33–34.)

Ms. Miksic, a vocational expert called by the Commissioner, testified that the type of job that plaintiff performed in Vietnam exists, in modified form, in the United States, selling to the Vietnamese community. (A.R.35.) She classified plaintiff's past work as "light" in terms of exertional level because it requires being on one's feet "a good deal of the time" but allows for sitting when there are no customers present. (A.R.36.) She further characterized it as "low level semi-skilled work" with an SVP level of 3.[4] She testified that a vendor must have some product knowledge and that the job also requires some knowledge of how to sell. (A.R.36.) In her opinion, the nature of the job in question had not changed significantly over the last nineteen years, and there are more such jobs in Los Angeles than there were nineteen years ago. (A.R.37.)

After reviewing the medical evidence, the Commissioner's consulting medical expert, Dr. Grodan, a cardiologist and internist, testified that plaintiff's hypertension was well-controlled and that EKG results were normal. (A.R.26.) He opined that plaintiff has a residual functional capacity for work between the "sedentary" and "light" levels of exertion. (A.R.27.)

In a written decision dated January 27, 1995, the ALJ made the following formal findings (A.R.19):

1. The claimant has not engaged in substantial gainful activity since December 3, 1991.

2. The claimant has the following severe medically determinable impairments: hypertension and atypical chest pain. There is no evidence of a psychiatric disorder.

3. The evidence of record also establishes that none of the claimant's impairments, either singly or in combination, meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulation No.4.

4. The claimant's multiple subjective complaints, including pain, and her alleged functional limitations, are not credible or substantially supported by the record.

5. The claimant has the residual functional capacity to perform light work-related

3. The record contains a letter dated March 31, 1992, from the State of California, Disability Evaluation Division, which has issued an "Uncooperative Source List." Dr. Demos's name appears on the list with the following notation: "Unreliable info. Sees mostly refugees." (A.R.94–95.)

4. "SVP" stands for "specific vocational preparation" and is defined in the U.S. Department of Labor's *Dictionary of Occupational Titles* (4th ed.1991) at 1009 as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. . . . It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job." An SVP of 3 means that specific vocational preparation of over one month and up to and including three months is required. *Id.*

activities with a sit/stand option at her own option.

6. The claimant's past relevant work as a market vendor does not require the performance of work-related activities precluded by the above-described limitations.

7. The claimant's past relevant work was unskilled.

8. The claimant is capable of performing her past relevant work as a market vendor.

9. The claimant was not under a "disability" as defined in the Act, at any time through the date of this decision [20 CFR 416:920(e) ].

## DISCUSSION

Under 42 U.S.C. § 405(g), the Commissioner's decision is subject to review in order to determine whether: (1) the findings are supported by substantial evidence, and (2) the Commissioner applied the proper legal standards. *Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

 The sole contention advanced by plaintiff on appeal is that the ALJ erred in finding that the work performed by plaintiff more than fifteen years ago constitutes "past relevant work" for purposes of the step four evaluation. *See generally* 20 C.F.R. § 416.965(a) and Social Security Ruling (SSR) 82–62, "Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General," 1982 WL 31386 (S.S.A.). For the reasons set forth below, I find that argument to be without merit. It will there-

fore be recommended that the Commissioner's decision be affirmed.

It is undisputed that plaintiff's work in Vietnam was performed over fifteen years ago.[5] The regulations provide that

> [w]e do not *usually* consider that work you did 15 years or more before the time we are deciding whether you are disabled applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15–year *guide* is intended to insure that remote work experience is not currently applied[.]

20 C.F.R. § 416.965(a)(emphasis added). SSR 82–62 explains that

> [w]hile the regulations provide that a claimant's work experience is usually relevant when the work 'was done within the last 15 years,' in some cases work performed prior to the 15–year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations.

1982 WL 31386, *2. It is therefore clear that the fifteen-year cut-off is not a fixed rule of law, but rather a guideline, the application of which is governed by the facts and circumstances particular to each case. *Accord, Smith v. Secretary of Health and Human Services*, 893 F.2d 106, 109 (6th Cir. 1989)("By the very terms of this regulation, fifteen years is not a bright line rule but a 'guide' intended to help the Secretary avoid concluding that a claimant who has worked in a job requiring marketable skills retains marketable skills after the workplace changed in its requirements.")

The ALJ found that plaintiff's past work in Vietnam, as she described it, was unskilled.[6]

---

**5.** It is also undisputed that plaintiff's past work is not disqualified from being considered past relevant work merely because it was performed in Vietnam. *See* SSR 82–40, "The Vocational Relevance of Past Work Performed in a Foreign Country," 1982 WL 31386 (S.S.A.). It must be borne in mind, accordingly, that the past relevant work at issue is the job in Vietnam—whether or not the same job exists in the United States (or, for that matter, whether it continues to exist in Vietnam). *See id.* at *2 ("The proper test in the fourth step of the sequential evaluation process is whether the individual can do his or her

previous work, whether in the U.S. or in a foreign economy. A job in a foreign economy need not have a counterpart in the U.S. economy, and the lack of authoritative occupational reference materials for foreign economies is not a barrier to the decision that a claimant can or cannot meet the physical and mental demands of a formerly held foreign job as he or she described it.").

**6.** The vocational expert testified that the job in this country that is most like plaintiff's work as a market vendor in Vietnam would be considered

He declined to apply the fifteen-year guideline, relying on decisions of other Courts of Appeal for the proposition that the rationale for applying the fifteen-year guideline is absent when the work involved was unskilled. Plaintiff's efforts to distinguish those cases are unavailing.

In one of the cases on which the ALJ relied, the court concluded that the fifteen-year cut-off "is not mandatory and need not be invoked where the work in question was unskilled." *Smith, supra,* 893 F.2d at 109. The court reasoned that "the rationale of the 15-year guide does not apply where the question concerns unskilled work" because the continuing relevance of job skills cannot be an issue when the work at issue, by definition, required no skills. *Id.*[7] The *Smith* court also observed that the Fifth Circuit had earlier concluded that, " '[i]n deciding to pretermit such dated work experience, ... the Secretary is entitled to consider the *particular kind of work involved and the extent to which the skills and abilities have changed over the years* .' " *Id.* (emphasis added)(citing *Bowman v. Heckler,* 706 F.2d 564, 567 (5th Cir.1983)).

In *Bowman,* the court found that the claimant could return to domestic work performed twenty years earlier. 706 F.2d at 567. She had worked in the intervening years as a school lunchroom cook and had kept her own house during that period, convincing the court she retained "the relatively uncomplicated skills" required to perform domestic work. *Id.* In *Barnes v. Sullivan,* 932 F.2d 1356, 1359 (11th Cir.1991), the court noted that the fifteen-year limitation does not prohibit considering work outside that period, but rather "merely creates a 'presumption of inapplicability' of skills and abilities acquired in work performed outside the 15-year period." Plaintiff argues that *Smith*

and *Barnes* are inapposite because the work at issue in those case was ultimately found to have been performed within the fifteen-year period. While true, that circumstance does not, standing alone, justify disregarding as persuasive authority the explicit reasoning set forth in those two decisions.[8]

In *Bowman,* moreover, the court did hold that work performed outside the fifteen-year period constituted past relevant work. Plaintiff argues that *Bowman* is distinguishable from the case at bar because plaintiff does not have any occupations within the fifteen-year period "to link up with her remote work." Pl's. Mem. at 4. The *Bowman* court did not, however, make intervening employment a necessary precondition to finding Bowman's remote work relevant. Indeed, the court expressly stated that it relied not only on Bowman's work as a cook, but also on the fact that she had kept her own house for years to conclude that she retained the limited skills required to return to domestic employment. Thus, the court construed the evidentiary record as a whole, looking at the " 'particular kind of work involved' " and the " 'extent to which the skills and abilities have changed over the years,' " to conclude that remote work qualified as relevant work. 706 F.2d at 567.

Plaintiff further argues that, regardless of the skill level of the past work at issue, defendant must justify the finding that work performed over fifteen years ago is relevant by establishing a continuity of skills, abilities, knowledge and processes between such remote work and more recent occupations. Pl's. Mem. at 3, 7–10; Pl's. Reply at 2–3. That argument is misguided in several respects.

---

"low-level semi-skilled" work. (A.R.36.) The ALJ concluded, however, that based upon plaintiff's own description of her duties, the work as she performed it in Vietnam was unskilled. (A.R.15–16.) The ALJ was entitled to rely on plaintiff's own statements to determine the requirements of her past work. *See* SSR 82–40, 1982 WL 31388 at *2; SSR 82–62, 1982 WL 31386 at *3. Moreover, plaintiff does not argue that the ALJ erred in finding plaintiff's work in Vietnam to have been unskilled. Rather, plaintiff contends that regardless of whether that work is considered unskilled or semi-skilled, it should

not have been considered "past relevant work." *See* Pl's. Mem. at 6, 9, 10.

**7.** It must be noted that neither *Smith* nor any other decision of which the court is aware has conditioned a finding of the relevance of past remote work on a determination that such work was unskilled.

**8.** The *Smith* court specifically found that the ALJ's finding of past relevant work was reasonable whether or not he found it to have fallen within the fifteen-year period. 893 F.2d at 108.

First, plaintiff cites no authority other than the language of SSR 82–62 for her assertion that defendant must establish a continuity of skills between remote and more recent occupations as a prerequisite to finding remote work to be relevant. As previously noted, SSR 82–62 provides that "in some cases work performed prior to the 15–year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations." SSR 82–62 neither states nor implies that the Commissioner has the burden to establish continuity or that continuity must be established in each and every case in which remote work is deemed relevant. Beyond that, it must be borne in mind that the controlling regulation contains no such requirement.[9]

Furthermore, as noted by defendant, courts have found remote work to be past relevant work even when the claimant had not been employed for an extended period prior to seeking disability benefits. *See Wallschlaeger v. Schweiker,* 705 F.2d 191, 196 (7th Cir.1983)(substantial evidence supported ALJ's alternative finding that claimant could perform past work when she was last employed over fifteen years earlier); *Lopez–Diaz v. Secretary of Health and Human Services,* 673 F.2d 13 (1st Cir.1982)(no error in ALJ's determination that plaintiff could return to jobs held seventeen years earlier as a "bead stringer" and "doll's eye setter" where there was undisputed expert testimony that requisite skills had not changed and that plaintiff could perform those jobs). In *Lopez–Diaz,* the court did not even discuss the skill level of the remote work, further indicating that waiver of the fifteen-year cutoff is not limited to unskilled work as a matter of law.

■ Second, despite her disclaimer to the contrary, plaintiff's argument effectively amounts to shifting the burden of proof at step four whenever the issue of remote past relevant work is presented. It is well-settled, however, that plaintiff has the burden of proof at steps one through four of the sequential evaluation procedure. *Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th Cir.1990). Only after plaintiff has established that she cannot perform her past relevant work does the burden shift to the Commissioner to prove, at step five, that there exists a significant number of jobs in the national economy that plaintiff can perform. *Id.*

The marked departure from precedent suggested by plaintiff's argument is certainly not authorized by the language of the regulation, nor has she cited or discussed any other authority supporting the construction she advances. To the contrary, plaintiff has the burden of establishing that she has no past relevant work. *Barnes,* 932 F.2d at 1359 ("The necessary consequence of this burden [that plaintiff must prove she is unable to perform her previous work] is that the claimant has the burden of showing that certain work experience is not past relevant work.") It is therefore plaintiff, not defendant, who must demonstrate that the skills, abilities, knowledge and processes of work performed more than fifteen years ago no longer have current relevance.

Plaintiff clearly has not done so, and she cannot cure that deficiency by arguing, belatedly, that the Commissioner is at fault. Her argument that her past work is irrelevant and "too remote for her to be able to draw on previously acquired skills and abilities" is simply an unsupported generalization. Pl.'s Mem. at 5–6. Plaintiff has offered no evidence or discussion regarding the particular skills and abilities involved in her past work as a market vendor of fabric and small appliances nor how she may have lost the ability to utilize those skills and abilities. Her contention that worker "abilities" and "aptitudes" (alertness, close attention, coordination, dexterity, operating controls, and reading instruments) are distinct from skills and are necessarily eroded by disuse is equally speculative. There is sim-

---

9. The regulation does not mandate that remote work be eliminated from consideration when there has no intervening employment. *See* 20 C.F.R. § 416.965(a) ("if a claimant has no work experience or worked only *off-and-on* or for brief periods of time during the 15–year period, we *generally consider*" that the remote work experience does not apply) (second emphasis added). In other words, the fact or nature of intervening work in simply one of the factors to be considered in the overall calculus.

ply nothing in the record to indicate whether or how any of the named abilities played more than an incidental role in her past work, nor how, even if relevant, those abilities have, in fact, been rendered useless. *See* Pl's. Mem. at 7.

Third, plaintiff does not challenge, or even discuss, the uncontradicted testimony of the vocational expert that work very similar to plaintiff's past work exists in this country, selling to the Vietnamese community, and that such work has not changed significantly over the past 19 years.[10] (A.R.35, 37.) It is reasonable to surmise that if such work has changed little in a highly-developed economy such as ours, it has, in all likelihood, changed little in a less-developed economy such as Vietnam's.[11] As the expert testified, plaintiff's work involved "very basic selling" in the market. (A.R.37.) The products involved (fabric, rice cookers, little portable stoves, and irons (A.R.29)) were not sophisticated, nor would it appear that those products have changed so that plaintiff's sales abilities and knowledge have become obsolete. To the contrary, the record suggests that plaintiff's past work was the most elementary kind of entrepreneurship, and there is no evidence that she has lost the basic skills or abilities necessary to perform that work, or that those skills and abilities have become obsolete.

---

**10.** At the hearing, plaintiff's counsel did not cross-examine the vocational expert. (A.R.37.) The ALJ also expressly advised counsel to address in closing the applicability of the 15-year rule to unskilled work and the issue of whether the rule should apply if the job in question had not changed. (A.R.38.) Counsel made a only a perfunctory effort to do so in his closing and did not seek to develop any hearing testimony in response to the ALJ's promptings.

**11.** Indeed, SSR 82–62 states that gradual change occurs "in most jobs in our national economy" so that it is no longer realistic to expect that skills or proficiencies acquired in those jobs continue to apply after 15 years. The ruling does not address the question of whether "most" jobs in other national economies can be expected to experience the same rate of change. The ruling also explains that the 15-year guide is intended to ensure that "remote work experience which could not reasonably be expected to be of current relevance is not applied." It does not purport to establish a blanket rule nor does it deny the possibility that remote work experience might, in

## CONCLUSION

For all of the reasons stated above, I find that the ALJ applied the appropriate standard in deciding whether work performed outside of the fifteen-year period constituted past relevant work, and that the record evidence "would allow a reasonable mind to conclude" that plaintiff's past work as a market vendor is past relevant work. *See Smith,* 893 F.2d at 108, 109. I therefore conclude that the Commissioner's decision must be sustained.

## RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED that the Court issue an order

(1) approving and adopting this Report and Recommendation; and

(2) dismissing the complaint with prejudice.[12]

---

some cases, "reasonably be expected to be of current relevance."

**12.** Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file objections with the above-named District Judge within 10 days as provided in Rule 3.1.04 and .05 of the Local Rules Governing Duties of Magistrate Judges and Fed.R.Civ.P. 72. A notice of appeal pursuant to the Federal Rules of Appellate Procedure should not be filed until Judgment has been entered. The failure of either party to object to a particular finding of fact or conclusion of law may constitute a waiver of the right to contest the matter on appeal. *Martinez v. Ylst,* 951 F.2d 1153, 1156 (9th Cir.1991); *Smith v.. Frank,* 923 F.2d 139, 141 (9th Cir.1991). Please note that the rules do not contemplate the filing of declarations, documents or other new factual material in support of objections, and the District Judge may decline to consider any such new matter.